Slip Op. 19-98

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| COLUMBIA FOREST PRODUCTS, *ET AL.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> SHELTER FOREST INTERNATIONAL ACQUISITION, INC., *ET AL.*, <br><br> Defendant-Intervenors. | Before: Jane A. Restani, Judge <br><br> Court No. 18-00098 |

## OPINION

[Commerce's determination not to initiate an anticircumvention inquiry is sustained]

Dated: July 30, 2019

  Timothy C. Brightbill, Wiley Rein LLP, of Washington, DC, for Plaintiffs Columbia Forest Products, Commonwealth Plywood Inc., States Industries, Inc., and Timber Products Company.  With him on the brief were Tessa V. Capeloto, Stephanie M. Bell, and Elizabeth S. Lee.

  Joshua E. Kurland, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the defendant.  With him on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director.  Of counsel was Caroline D. Bisk, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

  Daniel L. Porter, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, DC, for Defendant-Intervenor Shelter Forest International Acquisition, Inc.  With him on the brief was Gina M. Colarusso.

  Gregory S. Menegaz, deKieffer & Horgan, PLLC, of Washington, DC, for Defendant-Intervenors Linyi Chengen Import and Export Co., Ltd., Linyi City Shenrui International Trade Co., Ltd., Linyi Jiahe Wood Industry Co., Ltd., Linyi Sanfortune Wood Co., Ltd., Shandong

Dongfang Bayley Wood Co., Ltd., Shanghai Futuwood Trading Co., Ltd., Suqian Hopeway International Trade Co., Ltd., Suzhou Oriental Dragon Import and Export Co., Ltd., Xuzhou Jiangyang Wood Industries Co., Ltd., Xuzhou Longyuan Wood Industry Co., Ltd., Xuzhou Shengping Imp and Exp Co., Ltd., and Far East American, Inc.  With him on the brief were J. Kevin Horgan and Alexandra H. Salzman.

Kirsten Smith, Sandler Travis & Rosenberg, PA, of Washington, DC, for Defendant-Intervenor IKEA Supply AG.  With her on the brief were Arthur Purcell, of New York, NY, and Sarah E. Yuskaitis, of Washington, DC.

Jeffrey S. Grimson, Mowry & Grimson, PLLC, of Washington, DC, for Defendant-Intervenors Concannon Corporation, Fabuwood Cabinetry Corporation, Laminate Technologies, Inc., Masterbrand Cabinets, Inc., Northwest Hardwoods, Inc., Taraca Pacific, Inc., Patriot Timber Products, Inc., and USPLY LLC.  With him on the brief were Jill A Cramer and Bryan P. Cenko.

Restani, Judge:  This case involves an attempt by plaintiffs Columbia Forest Products, Commonwealth Plywood Inc., States Industries, Inc., and Timber Products Company (collectively "Columbia Forest") to expand unfair trade orders covering plywood with at least one hardwood veneer to cover plywood with no hardwood veneer, i.e., softwood veneered plywood.  It fails.

The matter is before the court on a motion for judgment upon the agency record by Columbia Forest.  Columbia Forest seeks a remand to the United States Department of Commerce ("Commerce") with instructions to perform a minor alterations anticircumvention analysis on softwood veneered plywood or provide legally sufficient reasons for why such an analysis is unnecessary.  See Pls. Columbia Forest's Mem. in Supp. of their R. 56.2 Mot. for J. on the Agency Record, ECF No. 60-1 (Nov. 21, 2018) ("Columbia Forest Br.").  Defendant United States ("the government") and Defendant-Intervenors argue that Commerce's determination not to initiate such an inquiry is supported by substantial evidence and otherwise lawful.  See Def.'s Mem. in Opp. to Pls.' R. 56.2 Mot. for J. upon the Agency Record, ECF No. 66 (Mar. 21, 2019) ("Gov. Br."); Def.-Ints.' Resp. to Mot. for J. on the Agency Record, ECF No.

67 (Mar. 21, 2019) ("Chengen Br."); Def. Int. Shelter Forest Acquisition, Inc.'s Mem. in Opp'n to Pls.' R. 56.2 Mot. for J. on the Agency Record, ECF No. 68 (Mar. 21, 2019) ("Shelter Br."); Def.-Ints. Concannon Corp., Fabuwood Cabinetry Corporation, Laminate Technologies, Inc., Liberty Woods International, Inc., Masterbrand Cabinets, Inc., Northwest Hardwoods, Inc., Taraca Pacific, Inc., Patriot Timber Products Inc. and USPLY LLC Resp. in Opp'n Pls.' Mot. For J. Upon the Agency Record, ECF No. 69 (Mar. 21, 2019) ("Concannon Br."); Resp. Br. of Def.-Int. IKEA Supply AG, ECF No. 70 (Mar. 21, 2019) ("Ikea Br.").  For the following reasons, the court grants the government's motion for summary judgment and denies Columbia Forest's motion for summary judgment.

## BACKGROUND

On November 18, 2016, the Coalition for Fair Trade in Hardwood Plywood ("Petitioners"), of which Columbia Forest Products, Commonwealth Plywood Inc., States Industries, Inc., and Timber Products Company are members, filed antidumping duty ("AD") and countervailing duty ("CVD") petitions covering certain hardwood and decorative plywood products ("hardwood plywood") from the People's Republic of China ("PRC").  See Certain Hardwood Plywood Products from the PRC: Petition for the Imposition of Antidumping and Countervailing Duties, A-570-051 & C-570-052 (Nov. 18, 2016) ("Petition").  The Petition defined "hardwood and decorative plywood" as "a flat panel composed of an assembly of two or more layers or plies of wood veneers in combination with a core[,] . . . [that] must have at least either the face or back veneer composed of one or more species of hardwood or bamboo."  Id. at 4.  The Petition also claimed that "[h]ardwood and decorative plywood may include products that meet the American National Standard for Hardwood and Decorative Plywood . . ."  Id.

On December 8, 2016, Commerce initiated AD and CVD investigations and solicited interested party input regarding the scope of the investigations. See Certain Hardwood Plywood Products from the PRC: Initiation of Less-Than-Fair-Value Investigation, 81 Fed. Reg. 91,125 (Dep't Commerce Dec. 16, 2016); Certain Hardwood Plywood Products from the PRC: Initiation of Countervailing Duty Investigation, 81 Fed. Reg. 91,131 (Dep't Commerce Dec. 16, 2016). After receiving scope comments, Commerce issued a preliminary scope decision memorandum on certain hardwood plywood products from the PRC. See Certain Hardwood Plywood Products from the PRC: Scope Comments Decision Memorandum for the Preliminary Determinations (Dep't Commerce Apr. 17, 2017) ("Preliminary Scope Memorandum").

Based on the Petition and the analysis set forth in its Preliminary Scope Memorandum, Commerce described the scope of the investigations, in relevant part, as follows:

> The merchandise subject to this investigation is hardwood and decorative plywood, and certain veneered panels as described below. For purposes of this proceeding, hardwood and decorative plywood is defined as a generally flat, multilayered plywood or other veneered panel, consisting of two or more layers or plies of wood veneers and a core, with the face and/or back veneer made of non-coniferous wood (hardwood) or bamboo. The veneers, along with the core may be glued or otherwise bonded together. Hardwood and decorative plywood may include products that meet the American National Standard for Hardwood and Decorative Plywood, ANSI/HPVA HP-1-2016 (including any revisions to that standard).
>
> For purposes of this investigation a "veneer" is a slice of wood regardless of thickness which is cut, sliced or sawed from a log, bolt, or flitch. The face and back veneers are the outermost veneer of wood on either side of the core irrespective of additional surface coatings or covers as described below.
>
> The core of hardwood and decorative plywood consists of the layer or layers of one or more material(s) that are situated between the face and back veneers. The core may be composed of a range of materials, including but not limited to hardwood, softwood, particleboard, or medium-density fiberboard (MDF).
>
> All hardwood plywood is included within the scope of this investigation regardless of whether or not the face and/or back veneers are surface coated or

> covered and whether or not such surface coating(s) or covers obscures the grain, textures, or markings of the wood. . .
>
> All hardwood and decorative plywood is included within the scope of this investigation, without regard to dimension . . . However, the most common panel sizes of hardwood and decorative plywood are 1219 x 1829 mm (48 x 72 inches), 1219 x 2438 mm (48 x 96 inches), and 1219 x 3048 mm (48 x 120 inches).
>
> . . .
>
> The scope of the investigation excludes the following items: (1) Structural plywood . . . manufactured to meet [certain U.S. Products Standards] and which has both a face and a back veneer of coniferous wood; (2) products which have a face and back veneer of cork; (3) multilayered wood flooring, as described in the antidumping duty and countervailing duty orders on Multilayered Wood Flooring from the [PRC] . . . (4) multilayered wood flooring with a face veneer of bamboo or composed entirely of bamboo; (5) plywood which has a shape or design other than a flat panel, with the exception of any minor processing described above; (6) products made entirely from bamboo and adhesives . . . ; and (7) Phenolic Film Faced Plyform (PFF), also known as Phenolic Surface Film Plywood (PSF)[.][1]

See Certain Hardwood Plywood Products from the PRC: Preliminary Affirmative CVD Determination, Preliminary Affirmative Critical Circumstances Determination, in Part, and Alignment of Final Determination with Final Antidumping Duty Determination, 82 Fed. Reg. 19,022, 19,024–25 (Dep't Commerce Apr. 25, 2017) ("CVD Preliminary Determination"); Certain Hardwood Plywood Products from the PRC: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, in Part, 82 Fed. Reg. 28,629, 28,638–39 (Dep't Commerce June 23, 2017) ("AD Preliminary Determination"). After publication of the CVD Preliminary Determination, however, Commerce clarified that plywood with both a face and back veneer of coniferous wood (softwood) was not included within the scope of the investigations. See Certain Hardwood Plywood Products from

---

[1] The scope language includes several additional explicit exclusions, for certain furniture goods, kitchen cabinets, table tops, countertops, and laminated veneer lumber door and window components, that are not applicable to the subject merchandise at issue here. See, e.g., AD Preliminary Determination, 82 Fed. Reg. at 28,638–39.

the PRC: Additional Scope Comments Preliminary Decision Memorandum and Extension of Deadlines for Scope Case Briefs and Scope Rebuttal Briefs at 7 (Dep't Commerce June 16, 2017). Accordingly, Commerce modified the scope language to remove reference to HTSUS subheadings 4412.39.1000 and 4412.39.3000, which cover exclusively plywood with both veneers of softwood. See id.; see also AD Preliminary Determination, 82 Fed. Reg. at 28,639.

On June 20, 2017, shortly before Commerce published its AD Preliminary Determination, Petitioners requested that Commerce clarify the scope of the investigations to cover decorative plywood with both face and back veneers of softwood. Certain Hardwood Plywood Products from the PRC: Request for Scope Clarification (June 21, 2017) ("Scope Clarification Request"). Petitioners argued that the language did not expressly exclude hardwood plywood with both veneers of softwood and that it was their intent to include such merchandise within the scope of the investigations based on their references to the decorative and hardwood plywood standards. Scope Clarification Request at 5, 8–9. In its response, Commerce again determined, based on the language of the scope, that plywood with both face and back veneers of softwood unambiguously fell outside the scope of the investigations. See Certain Hardwood Plywood Products from the PRC: Scope Comments Post-Preliminary Decision Memorandum at 10–12 (Dep't Commerce Oct. 16, 2017) ("Post-Preliminary Scope Determination") (stating that the plain language "expressly excludes the product"); Certain Hardwood Plywood Products from the PRC: Final Scope Comments Decision Memorandum at 14–19 (Dep't Commerce Nov. 6, 2017) ("Final Scope Determination").[2] Commerce also

---

[2] Commerce removed the following HTSUS subheadings from the scope, which cover exclusively plywood with face and back veneers of softwood: 4412.39.4011; 4412.39.4012; 4412.39.4019; 4412.39.4031; 4412.39.4032; 4412.39.4039; 4412.39.4051; 4412.39.4052; 4412.39.4059; 4412.39.4061; 4412.39.4062; 4412.39.4069; 4412.39.5010; 4412.39.5030; 4412.39.5050. Final Scope Determination at 19.

concluded that the Petitioners' "references to decorative plywood and the Hardwood Plywood Standard, simply state that softwood may be included as a component in hardwood plywood, but do not support the [P]etitioners' contention that it was their intent to include hardwood plywood with <u>both</u> a face <u>and</u> back veneer of softwood within the scope." <u>Final Scope Determination</u> at 18; <u>Post-Preliminary Scope Determination</u> at 11.  Moreover, Commerce rejected the Petitioners' argument that "hardwood plywood with both face and back veneers of softwood cannot be expressly excluded from the scope because the scope does not provide an express exclusion for such products." <u>Final Scope Determination</u> at 18.  Finally, Commerce expressed concern, inter alia, that expanding the scope "could also potentially be at odds with [Commerce's] industry support determination,[3] which was based on [its] and [the International Trade Commission's ("ITC")] understanding that hardwood plywood must have at least either a face or back veneer composed of hardwood or bamboo." <u>Post-Preliminary Scope Determination</u> at 12.[4]

On January 4, 2018, after receiving notification from the ITC that a domestic industry is materially injured because imports of certain hardwood plywood products were subsidized by foreign governments and sold in the United States at less than fair value, Commerce issued its final AD and CVD orders.  See <u>Certain Hardwood Plywood Products from the PRC: Amended</u>

---

[3] A petition for the imposition of unfair trade duties must be filed "on behalf of an industry." 19 U.S.C. §§ 1671a(b)(1).  Commerce determines that a petition is filed on behalf of the industry if there is support for the petition from domestic producers or workers who account for at least 25 percent of the total production of the domestic like product and more than 50 percent of the production of that portion of the industry expressing support or opposition to the petition.  19 U.S.C. §§ 1671a(c)(4)(A) & 1673a(c)(4)(A).

[4] The Final Scope Determination has not been challenged by any interested party.  See <u>Certain Hardwood Plywood Products from the PRC: Minor Alterations Anticircumvention Inquiry Request</u> at 13, P.D. 39 (Dep't Commerce Apr. 2, 2018); Pls. Columbia Forest Products, Commonwealth Plywood Inc., States Indus., Inc., & Timber Products Co.'s Reply Br. at 2 n.4, ECF No. 71 (Apr. 18, 2019) ("Reply Br.").

<u>Final Determination of Sales at Less Than Fair Value, and AD Order</u>, 83 Fed. Reg. 504 (Dep't Commerce Jan. 4, 2018) ("AD Order"); <u>Certain Hardwood Plywood Products from the PRC: CVD Order</u>, 83 Fed. Reg. 513 (Dep't Commerce Jan. 4, 2018) ("CVD Order") (collectively, "Orders").  Based on its Final Scope Determination, Commerce continued to define the subject merchandise "as a generally flat, multilayered plywood or other veneered panel, consisting of two or more layers or plies of wood veneers and a core, with the face and/or back veneer made of non-coniferous wood (hardwood) or bamboo."  <u>AD Order</u>, 83 Fed. Reg. at 512; <u>CVD Order</u>, 83 Fed. Reg. at 515.  Commerce did not further modify the scope language.

Shortly thereafter, on February 15, 2018, Columbia Forest requested that Commerce initiate an anticircumvention inquiry, pursuant to 19 U.S.C. § 1677j(c) and 19 C.F.R. § 351.225(i), to determine whether imports of plywood with both face and back veneers of softwood involve a minor alteration to the subject merchandise such that it would be subject to the Orders.  See <u>Certain Hardwood Plywood Products from the PRC: Request for Anti-Circumvention Inquiry</u> at 1–2, P.D. 1-4, C.R. 2-9 (Feb. 15, 2018) ("Anticircumvention Petition").  Columbia Forest provided evidence of alleged circumvention and argued that a circumvention determination would be appropriate under the factors traditionally used in minor alterations inquiries.  <u>Id.</u> at 11–16, 20.[5]

On April 2, 2018, Commerce decided not to initiate a minor alterations anticircumvention inquiry.  See <u>Certain Hardwood Plywood Products from the PRC: Minor Alterations</u>

---

[5] In its request, Columbia Forest explained that "[t]o improve the administrability of potential orders, U.S. Producers chose not to specify in the scope language that hardwood and decorative plywood may also have both a face and back veneer made of softwood.  Nonetheless, in the Petition, U.S. Producers clarified that [t]he term 'hardwood plywood,' as used in this scope definition, incorporates products referred to as decorative plywood and emphasized that, notwithstanding the term 'hardwood,' subject merchandise can be produced with softwood."  <u>Anticircumvention Petition</u> at 6 (internal quotations omitted).

Anticircumvention Inquiry Request, P.D. 39 (Dep't Commerce Apr. 2, 2018) ("Non-Initiation Memo"). Pursuant to 19 U.S.C. § 1677j(c)(2), Commerce concluded that "it is unnecessary to consider whether plywood products with both face and back veneers of softwood are within the scope of the Orders . . . because [Commerce] already determined during the investigation that such products are not included in the scope." Id. at 12; see also id. at 13–15 (citing its Post-Preliminary Scope Determination, relying on Wheatland Tube Co. v. United States, 161 F.3d 1365 (Fed. Cir. 1998), and distinguishing Nippon Steel Corp. v. United States, 219 F.3d 1348 (Fed. Cir. 2000) and Deacero S.A. De C.V. v. United States, 817 F.3d 1332 (Fed. Cir. 2016)). Commerce also stated that the inclusion of "plywood with both face and back veneers of softwood, which was not considered in the ITC's injury analysis, could potentially create a conflict with the ITC injury determination, and impermissibly expand the scope of the Orders." Id. at 13–14. Columbia Forest then timely initiated this action. See Complaint, ECF No. 9 (May 2, 2018).[6]

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012) and 19 U.S.C. § 1516a(a)(2)(B)(vi). This court "hold[s] unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B).

---

[6] Commerce subsequently initiated a separate anticircumvention inquiry pursuant to 19 U.S.C. § 1677j(d) concerning the same order at issue here but a regarding more limited product. See Certain Hardwood Plywood Products from the PRC: Initiation of Anti-Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders, 83 Fed. Reg. 47,883 (Dep't Commerce Sept. 21, 2018). Columbia Forest moved to stay this action pending Commerce's final determination in that anticircumvention inquiry. See Pls.' Mot. to Stay Proceedings 1–5, ECF No. 53 (Oct. 18, 2018). The court denied the motion. See Order Denying Stay, ECF No. 59 Nov. 13, 2018).

**DISCUSSION**

To prevent the circumvention of an antidumping or countervailable duty order, the Tariff Act of 1930 provides that the "class or kind of merchandise subject to [such orders] shall include articles altered in form or appearance in minor respects . . . whether or not included in the same tariff classification." 19 U.S.C. § 1677j(c)(1); see also 19 C.F.R. § 351.225(i) ("[Commerce] may include within the scope of an antidumping . . . duty order articles altered in form or appearance in minor respects"). In determining what alterations are properly considered minor, Commerce examines "such criteria as the overall characteristics of the merchandise, the expectation of ultimate users, the use of the merchandise, the channels of marketing[,] and the cost of any modification relative to the total value of the imported product." S. REP. NO. 100-71, at 100 (1987); see also Nippon Steel, 219 F.3d at 1354. The minor alterations provision states somewhat ambiguously that it does not apply if Commerce, determines that "it would be unnecessary to consider the altered merchandise within the scope of the investigation, order, or finding." 19 U.S.C. § 1677j(c)(2).

Section 1677j(c) essentially permits the inclusion "within the scope of an antidumping duty order products that are so insignificantly changed from a covered product that they should be considered within the scope of the order even though the alterations remove them from the order's literal scope." Wheatland Tube, 161 F.3d at 1371; see also Deacero, 817 F.3d at 1338 (stating that minor alterations inquiries "determine whether articles not expressly within the literal scope of a duty order may nonetheless be found within its scope as a result of a minor alteration to the merchandise covered in the investigation"). The purpose of the provision is to prevent circumvention through imports of "products with minor alterations that contain features

or technologies not in use in the class or kind of merchandise imported into the United States at the time of the original investigation." S. REP. NO 100–71, at 101 (1987).

In Wheatland Tube, the Court of Appeals for the Federal Circuit ("CAFC") held that a minor alterations inquiry is inappropriate with respect to "products unequivocally excluded from the order in the first place." 161 F.3d at 1371. In that case, domestic producers argued that the scope of several antidumping orders for certain steel pipes included line pipe and dual certified pipe. See id. at 1369. In reviewing that claim, Commerce decided to perform a scope inquiry rather than a minor alterations inquiry. Id. at 1368. The scope of the order stated that "[a]ll carbon steel pipes and tubes within the physical description outlined above are included within the scope of this investigation, except line pipe . . . [and] [s]tandard pipe that is dual or triple certified[.]" Id. at 1367. Commerce concluded that line and dual-certified pipe were clearly excluded from the scope of the orders, and, consequently, section 1677j(c)(1) did not apply because it was "unnecessary for Commerce to include the 'altered' merchandise to protect the antidumping duty order." See Wheatland Tube Co. v. United States, 973 F. Supp. 149, 163 (CIT 1997). The CAFC agreed, commenting that interpreting the scope to both include and exclude line and dual-certified pipe would render the orders internally inconsistent. Wheatland Tube, 161 F.3d at 1371 (A minor alterations inquiry was "unnecessary because it can lead only to an absurd result" and would "frustrate the purpose of the antidumping laws because it would allow Commerce to assess antidumping duties on products intentionally omitted from the ITC's injury investigation.").

In Nippon Steel, by contrast, the CAFC concluded that a minor alterations inquiry was appropriate with respect to certain steel products with a chemical composition of boron exceeding that of the subject merchandise. See 219 F.3d at 1350–56. The applicable order

covered alloy steel containing, by weight, not more than 0.0008 percent boron. See id. at 1350. Commerce initiated an anticircumvention inquiry after a domestic company alleged that foreign companies were increasing the amount of boron to circumvent the order. Id. at 1354. This Court preliminarily enjoined Commerce, reasoning, pursuant to Wheatland Tube, that an "absurd result" would occur if a minor alterations inquiry caused the antidumping order to "both exclude alloy steel containing more than 0.0008% boron and include alloy steel containing more than 0.0008% boron." Id. at 1356. But the CAFC reversed, distinguishing Wheatland Tube on the basis that it involved judicial review of a final agency action, a scope determination, and two different products both of which "were well known when the order was issued." Id. at 1356. Nippon Steel, however, involved an injunction barring the agency from conducting a proceeding, solely a minor alterations inquiry, and a product "produced by making allegedly insignificant alterations to an existing product." Id.

Finally, in Deacero, Commerce determined that steel wire rod with a 4.75-millimeter diameter fell under an antidumping duty order covering steel wire rods with a cross-sectional range of 5.00 millimeters to 19.00 millimeters as a minor alteration of the subject merchandise. 817 F.3d at 1336–39. The court held that substantial evidence supported the determination that the importer circumvented the order by reducing the diameter of the rods, which resulted in the exclusion of the product from the literal scope of the order. Id. at 1337–39. The court distinguished Wheatland Tube on the basis that the order did not contain an "explicit exclusion" of small-diameter rods. Id. at 1338 (identifying "certain metallic compositions of steel wire rod" that were explicitly excluded). It rejected the notion that the cross-sectional range could "be read to expressly exclude for purposes of anti-circumvention inquiries all products outside that range" as that would "render meaningless Congress's intent to address circumvention concerns." Id.

The court also emphasized that, at the time the petition was filed, the smallest diameter steel wire rod produced in the investigated countries was 5.5 millimeters. Id. at 1339.

The issue in dispute here is whether the Orders, defining the subject merchandise as having "the face and/or back veneer made of non-coniferous wood (hardwood) or bamboo," unequivocally exclude plywood with both veneers made of softwood such that it would be unnecessary to conduct a minor alterations inquiry. Columbia Forest argues that Commerce refused to initiate a minor alterations inquiry on the faulty premise that Commerce had already determined that the merchandise fell outside the plain language of the Orders. Columbia Forest Br. at 8–12; Reply Br. at 3–5. Columbia Forest contends that Commerce failed to distinguish Nippon Steel and Deacero and unreasonably relied on Wheatland Tube. Columbia Forest Br. at 12–18; Reply Br. 5–10. The government and Defendant-Intervenors, for their part, argue that Commerce's prior scope determination precludes a minor alterations inquiry, and that Commerce appropriately relied on Wheatland Tube and distinguished Nippon Steel and Deacero. Gov Br. at 7–19; Ikea Br. at 11–20; Chengen Br. at 6–12; Shelter Br. at 12–24; Concannon Br. at 9–28.

Commerce properly determined that the limitations on the circumstances contemplated by 19 U.S.C. § 1677j(c)(2) control the outcome of this case, correctly relying on the reasoning in Wheatland Tube. Here, the allegedly altered merchandise at issue was specifically considered during the investigation, was well-known at the outset of the investigation, and is different from the subject merchandise. First, plywood with both veneers of softwood was explicitly considered by Commerce during the investigation and found to be excluded from the scope based on the plain language of the Orders as drafted by the Petitioners. In Wheatland Tube, Commerce made a scope determination that line and dual-certified pipe were clearly excluded from the order on certain steel pipes. 161 F.3d at 1371 (affirming Commerce's determination

that a minor alteration inquiry under section 1677j(c) was unnecessary); see also Wheatland Tube, 973 F. Supp. at 163 ("As Commerce has made a final determination that the alleged 'altered merchandise' . . . is clearly excluded from the scope of the antidumping duty orders in effect . . . it is unnecessary [per section 1677j(c)(2)] for Commerce to include the altered merchandise to protect the antidumping duty order."). By contrast, in Nippon Steel and Deacero, Commerce at no point—either in an investigation or subsequent scope inquiry—considered the products at issue or determined that they are excluded from the scope. Here, however, Commerce understood, throughout the investigation, that both Petitioners' intent and the plain language of the scope preclude coverage of hardwood plywood with both a face and back veneer of softwood. Post-Preliminary Scope Determination at 10–11; Final Scope Determination at 18. These scope determinations at issue specifically sought to answer whether the merchandise is excluded from the scope of the investigation.

      Columbia Forest's responses to the contrary are unavailing. Columbia Forest claims that Commerce's prior scope findings only confirms a basic assumption in minor alterations inquiries: that the inquiry applies to merchandise that fall outside the literal scope of an order. Columbia Forest Br. at 11–12; Reply Br. at 3. But Columbia Forest misrepresents Commerce's reasoning that previous scope determinations rendered a minor alterations inquiry unnecessary. The scope determinations were not limited to the finding that the plain language of the scope excludes plywood with both veneers of softwood. Rather, Commerce also determined that the Petitioners did not intend to include the product with the scope of the investigation and that a finding otherwise would be at odds with the scope of the ITC injury determination, a basic requirement for an unfair trade order. See Post-Preliminary Scope Determination at 10–12; Final Scope Determination at 17–19. Because the scope clarifications occurred during the

investigation, Commerce was not interpreting the scope of the Orders, but was establishing it. Through its investigatory scope determinations, Commerce established that the limitation of merchandise to plywood with at least one hardwood or bamboo veneer excludes the use of two softwood veneers.

Columbia Forest contends that the Orders contain no express exclusion for plywood with both veneers of softwood and that only articles listed as "explicitly excluded" need not undergo a minor alterations inquiry.  Columbia Forest Br. at 10; Reply Br. at 4.  An affirmative circumvention decision here, Columbia Forest claims, would not require a simultaneous inclusion and exclusion of subject merchandise, as in Wheatland Tube, but instead would cover merchandise in addition to the ones expressly excluded, as in Deacero and Nippon Steel. Columbia Br. at 17.  This is not the case.  The final AD and CVD Orders were published based on the understanding that plywood with both veneers of softwood was excluded from the scope of the Orders.  Although the Orders do not contain language explicitly excluding the allegedly circumventing product, Commerce's previous clarification that the plain language of the scope was clear and required hardwood plywood to have at least one hardwood or bamboo veneer performs the same function—it unequivocally excludes from the scope of the order plywood with both veneers of softwood.

Moreover, like the merchandise in Wheatland Tube but unlike that of Nippon Steel and Deacero, plywood with both veneers of softwood was "well-known at the time of the investigations."  See Non-Initiation Memo at 15; Nippon Steel, 219 F.3d at 1356 (distinguishing Wheatland Tube on this basis); Deacero, 817 F.3d at 1339.  Interested parties and Commerce were aware that plywood was imported with both veneers of softwood under several HTSUS headings.  Indeed, Petitioners' 2013 petition for AD and CVD orders explicitly included

plywood with both veneers of softwood. See Hardwood and Decorative Plywood from the PRC: Final Determination of Sales at Less Than Fair Value, 78 Fed. Reg. 58,273, 58,275 (Dep't Commerce Sept. 23, 2013) ("A hardwood and decorative plywood panel must have face and back veneers which are composed of one or more species of hardwoods, softwoods, or bamboo."). In Nippon Steel and Deacero, the altered merchandise was not included in the physical description of the subject merchandise precisely because, at the time of the investigation, merchandise with the altered physical specifications was not known to be dumped into the United States. See, e.g., Deacero, 817 F.3d at 1339 (finding substantial evidence in Commerce's conclusion that the smallest diameter steel wire rod produced in the investigated countries at the time the petition was filed was 5.5 mm).

Finally, Commerce reasonably concluded that plywood with veneers of softwood was not an alteration of subject merchandise, but rather the production of a different product. See Non-Initiation Memo at 15. The Senate Report specifies that section 1677j(c) sought to prevent circumvention by "products with minor alterations that contain features or technologies not in use in the class or kind of merchandise imported into the United States at the time of the original investigation." S. REP. NO. 100–71, at 101. Plywood is composed of layers of wood plies adhered to a core. At some point in the production process, a choice is made as to which kind of wood will form the outermost layers (the veneers). Softwood plywood contains two softwood veneers and hardwood plywood, as defined by the Orders, contains at least one veneer of hardwood. If two layers of softwood plies are added to hardwood plywood, then arguably, hardwood plywood is turned into softwood plywood. This process, Columbia Forest argues, constitutes a minor alteration of the subject merchandise. See Columbia Forest Br. at 13–14;

Reply Br. at 7–10. But those veneers of softwood are not features of hardwood plywood.[7] Rather, they are components of many kinds of plywood, including those with softwood, hardwood, or bamboo cores. Although Commerce did not explicitly consider Columbia Forest's evidence of circumvention, its determination that the use of two softwood veneers results in the production of a different product is supported by substantial evidence.

Commerce was also justifiably concerned that including the merchandise within the scope of the order would have been at odds with the ITC injury determination. "A fundamental requirement of both U.S. and international law is that an antidumping duty order must be supported by an ITC determination of material injury covering the merchandise in question." Wheatland Tube, 973 F. Supp. at 158 (citing 19 U.S.C. § 1673). The ITC here defined the "domestic like product" based on an understanding that "hardwood plywood includes plywood that may have a face veneer and/or other layers of veneer of any softwood species so long as either the face or back veneer is of a hardwood species." Hardwood Plywood from China, Inv. Nos. 701-TA-565 & 731-TA-1341, USITC Pub. 4661 at 7 (Jan. 2017) (emphasis added); see also 19 U.S.C. § 1677(10) (defining a "domestic like product" as "a product which is like, or in the absence of like, most similar in characteristics and uses with, the article subject to an investigation"). Thus, there was no ITC injury determination of plywood that had neither a back nor front veneer of hardwood. See Hardwood Plywood from China, Inv. No. 701- TA-565 & 731-TA-1341, USITC Pub. 4747 at 10 (Dec. 2017). Commerce's concern about including the

---

[7] The Senate and House Reports provide examples of the kinds of features that would be considered a minor alteration. See S. REP. NO. 100–71, at 101 (1987) ("a minor alteration resulted in portable typewriters with calculator or memory features being excluded from the scope of an existing antidumping order on portable typewriters."); H.R. REP. NO. 100–40, at 135 (1987) (The minor alterations provision "might apply when steel sheet is temper rolled prior to importation . . . or when a fire resistance coating is applied to cookware prior to importation.").

allegedly altered merchandise within the scope of the Orders is especially important in the minor alterations context, where Commerce is not required to notify the ITC before making a determination. As this court explained in Wheatland Tube, the statutory scheme indicates that Congress sought to avoid a conflict with the requirement of an ITC injury determination by permitting only scope clarifications that were not "wholesale changes to the scope of the orders." 973 F. Supp. at 163. Given the scope of the ITC investigation, Commerce reasonably refrained from making an affirmative minor alterations finding because of the risk of a conflict with the requirement of an ITC injury determination.

      The court acknowledges that evidence demonstrates that, since the initiation of the investigation, import volumes of plywood with both veneers of softwood increased drastically compared with plywood with at least one veneer of hardwood. Although a substitution effect may be indicative of circumvention, it is not a sufficient cause for Commerce to initiate a minor alterations inquiry. This is especially true given that the scope of the subject merchandise is driven by physical characteristics rather than actual end use. If Columbia Forest or other domestic interested parties suffer material injury because imports of plywood with front and back veneers of softwood are subsidized by foreign governments or sold in the United States at less than fair value, then the appropriate remedy is the initiation of an AD or CVD investigation that covers plywood with front and back veneers of softwood. Although Commerce may use the anticircumvention provisions to interpret the scope beyond its literal terms, it cannot interpret it "in a way contrary to its terms." Smith Corona Corp. v. United States, 915 F.2d 683, 686 (Fed. Cir. 1990). To do otherwise would risk broadening the scope of an order to include a class or kind of merchandise that has not been the subject of a corresponding ITC injury determination. See Wheatland Tube, 973 F. Supp. at 163 n.9 ("When a class of merchandise already exists and

is well known to the parties, the minor alterations provision should not allow a petitioner to broaden the scope of an order in a way which petitioner avoided at the outset.").

To summarize, the purpose of the minor alterations provision is to include merchandise that would have been included within the scope of an order but for minor alterations removing the merchandise from the order's <u>literal</u> scope. This reasonably includes an intent that the merchandise as altered would have been included in the scope of the investigation if Commerce and the ITC had had reason to consider it at the outset of the investigation. <u>See</u> <u>Wheatland Tube</u>, 973 F. Supp. at 164 (holding that "declining to perform an anticircumvention investigation" was appropriate where "the merchandise at issue was always known to the parties, was discussed in respect to several rulings on scope and clearly was not included within the scope of the order"). Given this purpose, in determining whether it is unnecessary to perform a minor alterations inquiry under section 1677j(c)(2), it is reasonable for Commerce to consider whether the allegedly circumventing product existed at the time of the investigation and whether, during the investigation, Commerce already determined that the product is excluded from the scope. Accordingly, Commerce's decision that an anti-circumvention inquiry was unnecessary pursuant to 19 U.S.C. § 1677j(c)(2) is supported by substantial evidence and in accordance with law.

## CONCLUSION

For the foregoing reasons, Columbia Forest's motion for judgment on the agency record is **DENIED**. The court sustains Commerce's determination not to initiate a minor alterations anticircumvention inquiry regarding softwood veneered plywood.

/s/ Jane A. Restani
Jane A. Restani, Judge

Dated: July 30, 2019
      New York, New York